UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 07-cv-01345-WYD

DEBORA L. KITZKE,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.
_____

**ORDER**
_____

I.    <u>INTRODUCTION</u>

      THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433 and 1381-1383c ["the Act"]. For the reasons stated below, this case is reversed and remanded to the Social Security Commission for further factfinding.

      Plaintiff is a 41-year old woman who was previously found to be disabled and eligible for benefits for a closed period from June 7, 2001, through June 30, 2002. (Transcript ["Tr."] 260-63). She applied for benefits again through an application dated August 25, 2003, asserting an onset date of June 7, 2001. (*Id.* 58, 66.) She alleged that she was disabled due to "severe pain & swelling in left ankle & foot", recently diagnosed as reflex sympathetic dystrophy, and "irritable bowles". (*Id.* at 58.)

Plaintiff's application was initially denied on December 3, 2003 (Tr. 44-47), after which she requested a hearing. (*Id.* 42.) An administrative hearing was held on May 25, 2005. (*Id.* 234-59.) On July 15, 2005, the Administrative Law Judge ["ALJ"] issued a decision finding that Plaintiff was not disabled. (*Id.* 16-28.) The ALJ found that Plaintiff was not disabled at step five of the sequential evaluation because he found that there are a significant number of jobs in the national economy that Plaintiff can perform given her residual functional capacity ["RFC"]. (*Id.* 25-28.) This is discussed in more detail below.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 4-9.) Thus, the ALJ's July 15, 2005 decision became the final decision for purposes of judicial review, and the case is properly before the Court.

II.   THE ALJ'S DECISION

At step one of the sequential evaluation the ALJ determined that Plaintiff met the nondisability requirements for a period of disability and disability insurance benefits and was insured for benefits through the date of the decision. (Tr. 20, 27.) He further found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. (*Id.*)

At step two of the sequential evaluation, the ALJ found that the claimant had a severe impairment of reflect sympathetic dystrophy ["RSD] of the left ankle and foot. (*Id.* at 21, 27.) At step three, the ALJ found Plaintiff did not have an impairment that met or equaled the requirements of an impairment in sections 1.02, 1.04 and 11.04 of the Listing of Impairments. (*Id.*)

As to Plaintiff's RFC, the ALJ found that Plaintiff:

> has the residual functional capacity to perform work activities with the following limitations: she must avoid exposure to unprotected heights and extremes of cold and heat, climbing ladders, scaffolds and stairs, operating left leg controls and ambulating over uneven surfaces; she can lift and carry 10 pounds frequently and 20 pounds occasionally; sit for 4 hours at a time and for 8 hours a day; stand for 15 minutes at a time, walk for 5 minutes at a time with the assistance of a cane and stand/walk a total of 2 hours a day; constantly reach, finger, and feel; frequently handle, push and pull; and occasionally stoop, but should avoid kneeling and crouching.

(Tr. 25, 27). He found that the record did not establish "that the claimant has an impairment related need to elevate her leg significantly during the day or to access a restroom frequently during the day." (*Id.* 25.)

The ALJ found as to Plaintiff's credibility that while she had severe impairments that limit her to performing no more than a sedentary range of work activities, "to the extent that the claimant contends that her impairments preclude performance of all sustained work activities, her subjective complaints and alleged limitations are not supported by the record as a whole and are not fully persuasive." (Tr. 22.) He stated that he reviewed the criteria regarding the evaluation of subjective symptoms such as pain and fatigue and the medical evidence. (*Id.*) After a discussion of the evidence, the ALJ concluded that "the claimant's subjective complaints and alleged limitations are not fully persuasive." (*Id.* 25.)

At step four of the sequential evaluation, the ALJ found that Plaintiff's past work experience includes employment as a production monitor and child monitor. (Tr. 20.) He accepted the testimony of a vocational expert that she was unable to perform her

past relevant work given her RFC.  (*Id.* 25, 27.)  Accordingly, the ALJ proceeded to step five of the sequential evaluation.

At step five, the ALJ determined that Plaintiff could perform a significant range of sedentary work, which the vocational expert testified as being 85 to 90% of unskilled, sedentary occupations, including fishing rod assembler, addresser and document preparer, of which there were a total of 1036 jobs in Colorado.  (Tr. 26.)  The ALJ thus concluded that Plaintiff was not under a disability at any time through the date of his decision.  (*Id.* 27-28.)

III.    ANALYSIS

A.    Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487

(10th Cir. 1993).  Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner.  *Id.*

B.     Whether the ALJ's Decision is Supported by Substantial Evidence

My review of the record reveals errors that require the Commissioner's decision to be reversed and remanded for further factfinding.

1.     Whether the ALJ Erred in Failing to Properly Evaluate Plaintiff's Chronic Pain

Plaintiff argues that the ALJ failed to properly evaluate her chronic pain.  She also argues that the ALJ failed to properly consider her related testimony that she needs to elevate her foot for eight to ten hours a day to relieve the severe pain and swelling from her RSD.  (Tr. 244-46.)

I agree with Plaintiff that the ALJ failed to conduct a proper pain analysis and that the case must be remanded on this basis.  The framework for the proper analysis of a claimant's pain is set out in *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987); *see also Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992).  There is a three-step inquiry.  The court "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave*, 966 F.2d at 1376.

In this case, there is certainly objective medical evidence of a pain-producing impairment in this case (RSD), and I find there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain.  The ALJ noted that

Dr. Iannotti's treatment records document her impairments and the multiple medications taken by Plaintiff regarding same. (Tr. 23.) Further, the ALJ noted that medical records in five exhibits "all show findings of swelling, tenderness and limited range of motion in the left leg" (*id.*) *See Luna*, 834 F.2d at 164 ("If an impairment is reasonably expected to produce *some* pain, allegations of *disabling* pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence") (emphasis in original).

As further support for this finding, I note that the Social Security Administration issued a ruling to explain its policies for evaluating claims based on RSD. *See* SSR 03-2p, 2003 WL 22399117 (2003). As stated by one court in evaluating that ruling:

> The Ruling recognizes RSD as a chronic pain syndrome that may progress beyond the limb or body area originally involved and which manifests in intense pain that is out of proportion to the precipitating injury. The Ruling also recognizes that the pattern of the symptoms may not be entirely consistent due [to] the "transitory nature of the objective findings and the complicated diagnostic process involved.'" SSR 03-2p. The Ruling states: "Transient findings are characteristic of RSD/CRPS, and do not affect a finding that a medically determinable impairment is present." SSR 03-2p. . . . For this reason the medical opinion of treating physicians, particularly those with a longitudinal perspective, are accorded great deference and weight.

*Brooks v. Barnhart*, 428 F. Supp. 2d 1189, 1191-92 (N.D. Ala. 2006) (quoting Social Security Ruling 03-2p). Remarkedly, despite the fact that RSD is not a listed impairment, the ALJ did not discuss or even reference SSR 03-2p.

Since I find that there is a loose nexus between the impairment and the subjective allegations of pain, the ALJ was required to assess all the evidence, both objective and subjective, to determine whether Plaintiff's pain is in fact disabling. *Musgrave*, 966 F.2d at 1376. This evidence "includes the medical data previously

presented, any other objective indications of the degree of pain, and subjective accounts of the severity of the claimant's pain." *Luna*, 834 F.2d at 163. Other factors include "a claimant's persistent attempts to find relief for his pain and his willingness to try any treatment prescribed. . . regular contact with a doctor, . . . the possibility that psychological disorders combine with physical problems . . . the claimant's daily activities, and the dosage, effectiveness, and side effects of medication." *Id.* at 165-66; *see also* 20 CFR §§ 404.1529 and 416.929; Social Security Ruling 96-7p, 1996 WL 374186 (1996).

In this case, the ALJ concluded that "to the extent that the claimant contends that her impairments preclude performance of all sustained work activities, her subjective complaints and alleged limitations are not supported by the record as a whole and are not fully persuasive." (Tr. 22.) In so finding, the ALJ claimed to have "carefully considered the criteria regarding the evaluation of subjective symptoms such as pain and fatigue enumerated in 20 CFR 404.1529, 416.929 and Social Security Ruling 96-7p". (*Id.* 22.) However, I agree with Plaintiff that his findings on that issue are not readily apparent. The ALJ did not discuss many of the relevant factors or even specifically state why he rejected the findings of pain. I find that this is error that requires a remand of the case. *See Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1997) ("'[I]t is well settled that administrative agencies must give reasons for their decisions.' . . . Here, the ALJ gave his conclusion but not the reasons for his conclusion") (quotation omitted).

As to those factors, the record overwhelmingly substantiates Plaintiff's complaints of pain, which is noted on nearly every page of the medical evidence, along

with the numerous medications prescribed to assist Plaintiff with that pain.  Further, Social Security Ruling 03-2p clearly recognizes that RSD is a chronic pain condition. No medical provider opined that Plaintiff exaggerated her symptoms.  Indeed, Dr. Iannotti wrote in his clinical note of March 18, 2005, "here for med refills for rsd, neurology will not treat rsd. complaint not malingering".  (Tr. 229.)  The ALJ also ignored the testimony that Plaintiff was very limited in her activities because of this pain.  (*Id*. 247-50.)

As to attempts by Plaintiff to alleviate that pain, the ALJ rejected Plaintiff's testimony that she needed to elevate her foot frequently during the day.  The ALJ relied on the fact that the Medical Assessments of Dr. Kirby and Dr. Iannotti failed to identify this need, which he found "diminish[es] the persuasiveness of her testimony".  (Tr. 23-24.)  In fact, however, I agree with Plaintiff that there was no place on the Medical Assessment form for the doctors to indicate how Plaintiff could relieve her leg pain and swelling.  (*Id*. 160-62.)

Further, there was evidence in the record which supported elevation of the leg to alleviate the swelling, which the ALJ improperly ignored.  First, there was medical evidence of that.  Dr. Eric Christiansen recommended "elevate and use cold pac qid until swelling gone" in her left ankle on May 23, 2002.  (Tr. 114.)  Further, Plaintiff reported to Dr. Cucich that she has to spend most of her day with her left leg elevated (*id*. 151-52), and made other statements in the record which supported this finding.  (*Id*. 58, 75-78, 82.)  It could be inferred that Plaintiff did not require repeated reminders to elevate her ankle since she testified that she was doing so continually.  Finally, the fact that elevating one's leg is a remedy to help with swelling certainly seems to be common

knowledge.  *See* http://www.wcyh.org.uk/diseases/diseases/leg-swelling;

http://www.ehow.com/how_2070388_reduce-leg-swelling.html.  Accordingly, I find that

the ALJ's outright rejection of this limitation is not supported by substantial evidence.

Further, if the ALJ did not believe that Plaintiff had a need to elevate her leg,

most of every day, simply because that information was not overtly expressed in the

Medical Assessment forms, I agree with Plaintiff that the ALJ had an obligation to

contact Dr. Iannotti or the other medical providers to clarify that point.  *See Robinson v.

Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("If evidence from the claimant's treating

doctor is inadequate to determine if the claimant is disabled, an ALJ is required to

recontact a medical source, including a treating physician, to determine if additional

needed information is readily available) (citing 20 CFR §§404.1512(e)(1) and

416.912(e)(1)).  This was particularly true since there was evidence in the record that at

least one doctor did tell Plaintiff to elevate her leg, as discussed above, and the

vocational expert opined that a person who had to significantly lift her leg would be

unemployable.  (Tr. 256-257.)

I also note that the ALJ failed to consider the finding in ALJ Martinez' decision of

February 14, 2003 regarding this issue.  ALJ Martinez noted that "[c]laimant testified

she had to keep her left foot elevated all of the time, except when she used the

restroom in order to keep it from swelling," that "[t]he etiology of the swelling was not

known" and found that "[t]his conclusion is supported by the claimant's significant

medical treatment history."  (Tr. 261.)  Accordingly, he found her disabled for a closed

period of disability.  (*Id.* at 265.)  Although this earlier decision was not a part of the

record when the ALJ issued his decision, Plaintiff's attorney referred to her "prior

hearing [at which] you agreed to a closed period of disability" in his questioning. (*Id.* 246.)  This should have alerted the ALJ to that earlier proceeding.  *See Baca v. Dept. of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993) (the ALJ has a duty to fully and fairly develop the record as to material issues).

I further note that several courts have held that a prior decision may be binding on an issue where there is no evidence of an improvement or change in a claimant's condition.  *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841-43 (6th Cir. 1997); *Lively v. Sec'y. of Health and Human Servs.*, 820 F.2d 1391, 1392 (4th Cir. 1987).  At the hearing in this matter, Plaintiff was asked about whether her condition had improved since the hearing at which she had been awarded a closed period of disability, to which Plaintiff replied that her condition had actually gotten worse.  (Tr. 247.)  On remand, the ALJ should thus consider this finding by the prior ALJ and explain his reasons for accepting or rejecting that finding.

Finally, "[i]f the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry."  *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994).[1]  "The [Commissioner] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers.*'"  *Id.* (emphasis in original) (quotations omitted).  "A vocational expert is ordinarily required to determine what limitation. . . pain might impose on a claimant's ability to do. . . work."  *Id.*  The ALJ must also address this issue on remand.

---

[1]  Citation to this and other unpublished opinions in this Order are made because I find that they have persuasive value with respect to a material issue that has not been addressed in a published opinion and/or would assist the court in its disposition.  10th Cir. R. 36.3(B).

2.  Whether the ALJ Erred in Finding that Plaintiff's Irritable Bowel
    Syndrome was not a Severe Impairment

Plaintiff also argues that the ALJ rejected her evidence about the effects of her IBS solely because of the sparse medical evidence and improperly ignored her testimony about this issue.  Accordingly, she argues that this claim should be remanded to allow the ALJ to consider IBS as a "severe impairment" and for it to be considered together with her RSD to determine their combined effect on her ability to work.

I first note that whether an impairment is severe must be made at step two of the sequential evaluation.  "Step two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'"  *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *1 (10th Cir. 2004) (quotation omitted).  "While 'the mere presence of a condition or ailment' is not enough to get the claimant past step two. . . a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis."  *Id.* (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004)).  In order to make this showing, it must be demonstrated that a particular impairment has "more than a minimal effect" on a claimant's ability to work.  *Williams v. Bowen*, 844 F.2d 748 (10th Cir. 1988).[2]

In the instant case, the ALJ noted that Plaintiff was claiming disability because of IBS but did not find that it was a severe impairment.  (Tr. 20-21.)  Indeed, in his

---

[2]  While the Commissioner argues that the evidence did not indicate that Plaintiff's "condition resulted in significant, let alone disabling, limitations" (Defendant's Response Brief at 19), that is not the standard for finding an impairment to be severe at step two.

discussion at step two, the ALJ did not discuss IBS at all or indicate why it was not a severe impairment. (*Id.*) This was error which I find was not harmless as the ALJ's findings as to IBS at other steps of the sequential evaluation did are not supported by substantial evidence. *See Martinez v. Apfel*, No. 08-2008, 2008 WL 3410092, at *3 (10th Cir. 2008).

The ALJ did discuss IBS and Plaintiff's complaints related to same in determining Plaintiff's RFC. (Tr. 21-22.) He noted Plaintiff's testimony "that she has a history of irritable bowel syndrome diagnosed in 1993 that causes her to go to the bathroom almost every 5-10 minutes every other day, and an average of 15 times in 8 hours." (*Id.* 21.) The ALJ further "noted that although the claimant reported having irritable bowel syndrome since 1992 or 1993, she worked at a level of earnings sufficient to constitute substantial gainful activity for many years after that date" in work that was classified as medium work." (*Id.* 22.) He further discussed the medical evidence and concluded that "[t]he claimant's testimony as to the frequency and severity of her need for access to a bathroom . . . does not appear to be supported by the medical records." (*Id.*) He found that neither Dr. Kirby nor Dr. Iannotti "assessed additional limitations related to [IBS]." (*Id.* 24.) Thus, he omitted any reference for frequent access to toilet facilities in his RFC.

I find that the ALJ's findings as to IBS are not supported by substantial evidence. I first note that the Medical Assessments completed by Drs. Kirby and Iannotti did not ask for, or suggest the need for providing information related to Plaintiff's IBS or need to go to the restroom. (Tr. 159-163; 195-199.) Further, I find that there was medical

evidence which supported the existence of this impairment, as Plaintiff notes. The ALJ did not properly consider this evidence.

Specifically, in his August 19, 2008 narrative report, Dr. Kirby noted that Plaintiff had told him that she suffered from IBS and that she had been "let go" from her factory position in 1993 because "my IBS would cause me to be late for work and spend too much time in the bathroom." (Tr. 191.) Dr. Kirby also confirmed that she had IBS from her past medical history. (*Id.*) Indeed, ALJ Martinez found that Plaintiff had a severe impairment of IBS in connection with the closed period of disability. (*Id.* 265.)

Dr. Brian Smith, who was Plaintiff's primary treating provider ["PTP"] from July 2003 to June 2004, noted on November 21, 2003 that Plaintiff "has chronic problems with IBS, diarrhea prominent" and on March 4, 2004 that her "IBS is also flaring." (*Id.* 182, 184.) Dr. Iannotti took over as her PTP in August 2004 (*id.* 178) and his clinical notes stated that she had been "diagnosed with irritable bowel syndrome" since 1990, beginning with his entry on November 11, 2004. (*Id.* 174.) This was repeated in each of his clinical notes from November 22, 2004 through July 21, 2006. (*Id.* 164-172; 208-229.) Although Dr. Iannotti did not appear to discuss IBS in his brief treatment comments, that condition was noted as present on every page of his records.

Finally, I note that Plaintiff complained to Dr Smith about urinary incontinence which she had been experiencing for a while and which was getting worse. (Tr. 180.) Although not necessarily supportive of IBS, it does support Plaintiff's testimony that she frequently had to go the restroom.

If the ALJ had questions about Plaintiff's IBS or felt the medical evidence was inadequate to determine if the IBS impacted Plaintiff's ability to work, the ALJ should

have contacted the physicians to make further inquiry. *Robinson*, 366 F.3d at 1084. This was particularly important in this case as the vocational expert opined that if a hypothetical person had to frequently use the rest room, it would render the person unemployable. (Tr. 257.)

The ALJ also did not find Plaintiff's testimony about her IBS to be credible because she had continued working after it was diagnosed in 1993 "for many years" at earning levels above substantial gainful activity. The fact that Plaintiff may have continued working for a period of time after she was first diagnosed with IBS does not, however, support a conclusion that the symptoms were of the severity now complained. There is nothing in the record which supports such a finding, and this is improper speculation on the part of the ALJ. *See Langley*, 373 F.3d at 1121 (improper speculation occurred by the ALJ where there was no legal or evidentiary basis for the finding).

The Commissioner argues that Plaintiff's level of activities, including the ability to perform household chores, shop, sit and watch movies, were inconsistent with her allegation that her IBS was a severe impairment. (Def.'s Resp. Br. at 16.) I do not agree. None of the activities referenced by the Commissioner preclude a person from taking frequent restroom breaks. Work would, however, preclude a person from taking such breaks, as the vocational expert opined that such a person would be unemployable if they took such breaks. (Tr. 257.) Further, the household chores that Plaintiff testified to were minimal. "[T]he ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993); *see also Byron v. Heckler*, 742 F.2d

1232, 1235 (10th Cir. 1984) (sporadic diversions do not establish that a person is capable of engaging in substantial gainful activity").

Finally, while Plaintiff did not appear to receive significant treatment for IBS during the relevant time period, as the Commissioner notes, there was no evidence that this condition could be treated. The court faced this issue in *Pierce v. Apfel*, 21 F. Supp. 2d 1274 (D. Kan. 1998). There, the claimant suffered from fecal incontinence that was caused by intestinal bypass surgery eleven years earlier, resulting in his having six to seven stools a day. *Id.* at 1275. He had been diagnosed with, among other things, irritable bowel syndrome. *Id.* At the agency hearing, the ALJ found that Pierce's subjective complaints were not supported by the evidence because he had not sought medical attention for his diarrhea between his surgery in 1978 and 1986. *Id.* at 1279. The court rejected this reason for denying benefits because there was no evidence that this condition could be treated. *Id.* In addition, there was no evidence that would suggest that Pierce's statements were false or exaggerated. *Id.*

Finally, an ALJ is required to assess all of Plaintiff's impairments in combination, including those found not to be severe. *See Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) ("When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination") (citing 42 U.S.C. § 423(d)(2)(C)). Thus, on remand, even if the IBS is found not to be severe, the ALJ must still consider this in combination with the RSD. In doing so, the ALJ must assess not only Plaintiff's ability to obtain employment, but "the ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" that is relevant to

the determination of disability.  See Soc. Sec R. 96-8p(1), 1996 WL 374184, at *1.  In making this assessment, the ALJ must keep in mind that "'[a] finding that a claimant is able to engage in substantial gainful activity requires . . . a determination that the claimant can *hold* whatever job he finds for a significant period of time.'"  *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir.  1994) (emphasis in original) (quotation omitted).

IV.    CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further factfinding pursuant to 42 U.S.C. § 405(g).

Dated August 21, 2008

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge